IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JODI RIGHTLER-MCDANIELS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No.: _____ |
| ) | Judge: _____ |
| SOUTH COLLEGE OF TENNESSEE, LLC, ) | JURY DEMAND |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW the Plaintiff, Dr. Jodi Rightler-McDaniels, and hereby sues the Defendant, and for cause of action would show unto this Honorable Court as follows:

1. Plaintiff, Jodi Rightler-McDaniels, is a citizen and resident of Placer County, California.

2. Defendant, South College of Tennessee, LLC, is a private for-profit corporation with its principal address at 3904 Lonas Drive, Knoxville, TN 37909-3323, and may be served with process by its Registered Agent, Stephen A. South, 3904 Lonas Drive, Knoxville, TN 37909-3323.

3. Jurisdiction is founded upon Federal Question, 28 U.S.C. § 1331, the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e, *et seq*, including the Pregnancy Discrimination Act of Title VII, 42 U.S.C. § 2000e(k), and the Civil Right Act of 1991, 42 U.S.C. § 1981a, and the doctrine of Supplemental Jurisdiction, 28 U.S.C. § 1367.

4. Venue is proper under the code provisions cited herein, and 28 U.S.C. § 1391(b) and (c).

5. At all times stated herein, Defendant is an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* including the Pregnancy Discrimination Act of Title VII, 42 U.S.C. § 2000e(k), and the Civil Right Act of 1991, 42 U.S.C. § 1981a.

6. At all times stated herein, Defendant is an employer subject to the provisions of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.*

7. Defendant is an employer engaging in an industry affecting commerce and employs more than twenty (20) regular employees.

8. Employers, such as the Defendant, must train and supervise its managers to comply with anti-discrimination laws in order to protect employees in the workplace.

9. Employers, such as the Defendant, must promptly and honestly investigate complaints of discrimination in the workplace.

10. Employers, such as the Defendant, must eradicate discrimination and retaliation in the workplace.

11. Employers, such as the Defendant, must never ignore discrimination in the workplace, nor retaliate against employees who complain of discrimination.

12. Employers, such as the Defendant, must conduct fair, honest, and unbiased investigations.

13. The Plaintiff is female.

14. Plaintiff was originally hired by Defendant in August of 2008 as an Adjunct Instructor.

15. During her employment, Plaintiff earned several promotions.

16. During her employment, Plaintiff earned several raises.

17. During her employment, Plaintiff received positive evaluations.

18. In December of 2013, Plaintiff was promoted to the Department Chair of General Studies.

19. In May of 2014, upon successful completion of her Ph.D. from the University of Tennessee, Knoxville, Plaintiff was promoted to Assistant Professor of Communication.

20. In 2016, in addition to Plaintiff's position as an Assistant Professor, Plaintiff was promoted to Senior Department Chair of General Studies.

21. In June of 2018, Plaintiff successfully completed the Movement in Rank process and was promoted to Associate Professor of Communications.

22. At the time of her termination, Plaintiff was the Senior Department Chair of General Studies and an Associate Professor of Communications.

23. At the time of her termination, Plaintiff oversaw and managed other professors.

24. During her employment, Plaintiff never received a written reprimand or written warning concerning her performance until after she complained of discrimination.

25. During her employment, Plaintiff never received a verbal warning concerning her performance until after she complained of discrimination.

26. From April 9, 2018 until July 31, 2018, Plaintiff's direct supervisor was Dr. Betsy Sparks.

27. At all times stated herein, Dr. Betsy Sparks was an agent and employee of Defendant.

28. At all times stated herein, Dr. Betsy Sparks had the authority to discipline and to terminate Plaintiff.

29. On May 21, 2018, Plaintiff was instructed by Dr. Betsy Sparks to cut and reduce the teaching hours of Stephenie Bozdogan, Assistant Professor in the Department of General

3

Studies, due to Ms. Bozdogan's pregnancy.

30. As of May 21, 2018, Stephenie Bozdogan, Assistant Professor in the Department of General Studies, was pregnant.

31. As of May 21, 2018, Stephenie Bozdogan, Assistant Professor in the Department of General Studies, was also a disabled veteran.

32. Dr. Betsy Sparks was aware and/or had knowledge that Stephenie Bozdogan, Assistant Professor in the Department of General Studies, was pregnant on or before May 21, 2018.

33. On May 21, 2018, Defendant instructed the Plaintiff to reduce Stephenie Bozdogan's teaching hours, even though Stephenie Bozdogan had already been teaching the same course load/schedule the quarter prior.

34. As of May 21, 2018, Stephenie Bozdogan, did not want her hours to be reduced, nor did she request for her hours to be reduced.

35. Reducing a professor's teaching hours, such as Stephenie Bozdogan, would have a negative impact on that professor's compensation.

36. Reducing a professor's teaching hours due to their pregnancy would be considered a violation of Federal and Tennessee law.

37. Other professors worked hours that were similar to Stephenie Bozdogan's hours, but Defendant did not instruct Plaintiff to reduce their hours.

38. In response to Defendant's instruction to reduce Stephenie Bozdogan's hours, Plaintiff refused to treat this professor differently solely because she was pregnant.

39. On or about May 21, 2018, Plaintiff opposed Defendant's instructions to discriminate against Stephenie Bozdogan by cutting her teaching hours because she was pregnant.

40. On or about May 21, 2018, Plaintiff complained to Dr. Betsy Sparks that reducing

4
Case 3:19-cv-00345-HBG   Document 1   Filed 09/04/19   Page 4 of 16   PageID #: 4

Stephenie Bozdogan's teaching hours because she was pregnant would be illegal discrimination.

41. However, on or about May 23, 2018, Defendant eventually reduced Stephenie Bozdogan's teaching hours.

42. On or about May 23, 2018, Stephenie Bozdogan told Plaintiff that she felt the reduction of her teaching hours was discriminatory.

43. As a result of Defendant reducing her teaching hours, Stephenie Bozdogan's total compensation decreased.

44. The Defendant claimed that Stephenie Bozdogan was working too many hours and this was an accreditation issue, but other professors worked similar hours as Ms. Bozdogan, and they continued to do so even after Ms. Bozdogan's teaching hours were reduced that quarter.

45. However, on June 14, 2018, Randall Carr admitted that this was not an accreditation issue or Defendant's policy.

46. After Plaintiff opposed the discriminatory conduct toward Ms. Bozdogan, and after she complained about the sex and/or pregnancy discrimination to her direct supervisor at the time, Dr. Betsy Sparks, Defendant began retaliating against Plaintiff.

47. On June 7, 2018, Dr. Betsy Sparks went behind Plaintiff's back, and changed the schedule of the math faculty without telling Plaintiff.

48. On June 12, 2018, for the first time in Plaintiff's career with Defendant, she was placed on a performance improvement plan ("PIP"). (A true and exact copy of the performance improvement plan is attached hereto as Exhibit 1).

49. Prior to opposing the discriminatory conduct and complaining about discrimination, Plaintiff had never been disciplined, either verbally or written, nor had she received a PIP.

50. Plaintiff's PIP (Exh. 1) was trumped-up and made for the purpose of documenting

Plaintiff's personnel file in retaliation for her complaints of discrimination and refusal to engage in pregnancy discrimination.

51. In response, Plaintiff refused to sign the PIP. (Exhibit 1).

52. The PIP contains numerous fabrications and/or embellishments. (Exhibit 1).

53. The PIP alleged that Plaintiff did not adequately handle the staffing needs for the General Studies courses, but all decisions with respect to staffing, including overload staffing, were given final approval by Dr. Sparks or Dr. Kim Hall and there were no issues with the staffing until after Plaintiff refused to discriminate against Stephenie Bozdogan.

54. On June 14, 2018, Plaintiff made a formal grievance to Randall Carr, Vice President of Talent Management and Human Resources, that she was being discriminated against and retaliated against.

55. On June 14, 2018, Plaintiff asked Mr. Carr for a third-party presence when they met. Mr. Carr ignored Plaintiff's requests, showed up unannounced in Plaintiff's office, shut the door without Plaintiff's permission, and told Plaintiff that if she continued this request, she was "gonna (sic) get me ticked off."

56. Later, on June 14, 2018, Mr. Carr called a meeting with Plaintiff and Mr. Jeremy Wells, who now serves as the Chief Academic Officer. Plaintiff again complained of harassment, discrimination, and retaliation to Mr. Carr and Mr. Wells, both of whom ignored Plaintiff's claims.

57. During the June 14, 2018, meeting, Mr. Carr stated—prior to conducting an investigation—that he did not feel Dr. Sparks was being discriminatory and explicitly told Plaintiff that he would not be investigating any pregnancy discrimination claims.

58. During the June 14, 2018, meeting, Plaintiff asked Mr. Carr if he planned on investigating any other Dean and/or Department Chair for typos in their syllabi, as this was one basis for Plaintiff's PIP, but Mr. Carr said no.

59. During the June 14, 2018, meeting, Plaintiff again reiterated to Mr. Carr and Mr. Wells that she felt harassed and discriminated against. Mr. Carr responded by threatening the Plaintiff by stating, "You can never take on a superior in an organization head-to-head…and think you're going to win, OK? I don't care who you are…you're just not going to win. So don't try to overpower us."

60. On June 18, 2018, Plaintiff sent Randall Carr a formal response to the PIP, to which Mr. Carr never acknowledged. (A true and exact copy of Plaintiff's response is attached hereto as Exhibit 2).

61. Plaintiff continued to complain about Defendant's discriminatory and retaliatory treatment of her until she was terminated.

62. After Plaintiff submitted her response to her PIP (Exh. 2), Randall Carr claimed he conducted an "investigation" but, in fact, Mr. Carr did not even speak to Plaintiff, nor any of her subordinates, including Ms. Bozdogan, and he wrote a self-serving response which contains false statements and inaccuracies to cover Defendant's discrimination and retaliation. (*See* Carr's Response to Grievance, attached hereto as Exhibit 3).

63. Defendant did not take Plaintiff's complaints of discrimination and retaliation seriously and failed to conduct a fair, honest, and unbiased investigation into Plaintiff's complaints.

64. Thereafter, Defendant continued to retaliate against Plaintiff.

65. Prior to her abrupt retirement on July 31, 2018, Dr. Betsy Sparks stopped communicating with Plaintiff, and began taking retaliatory action against Plaintiff, such as making scheduling decisions without Plaintiff's input and ordering Plaintiff to teach more classes than she previously taught.

66. For example, on June 13, 2018, Registrar Kristi Morgan emailed Plaintiff and Dr.

Sparks regarding opening one seat in a COM 1260 (Effective Speaking) online section. Rather than simply open one seat, Dr. Sparks instructed Ms. Morgan to open an entire section and assign the course to Plaintiff. This was Plaintiff's first online section of this class and gave her less than two weeks (over her break) to prepare.

67. Without providing any explanation, Defendant denied the monetary raise that was to accompany Plaintiff's Movement in Rank from Assistant Professor to Associate Professor in June of 2018 to her financial detriment.

68. Further, on July 5, 2018, Defendant forced Plaintiff to teach an online SCC 1010 (College Management) course. This SCC 1010 course was a five-week course and had already been meeting for one full week. Plaintiff had never taught this course online before, and Plaintiff did not receive any prior notice or explanation.

69. Despite increasing the number of classes Plaintiff taught, Defendant refused to further compensate Plaintiff.

70. Defendant made Plaintiff's job much more difficult in an effort to encourage Plaintiff to quit, but Plaintiff did not want to quit.

71. On July 11, 2018, Plaintiff was informed by Mr. Carr and Dr. Sparks that Defendant was dissolving her position of Senior Department Chair of General Studies to create a new position titled "Dean of General Studies."

72. On July 11, 2018, Plaintiff asked Mr. Carr and Dr. Sparks how the new Dean of General Studies position was different than Plaintiff's current position of Senior Department Chair of General Studies, and Defendant refused to respond to Plaintiff.

73. In fact, the Dean of General Studies position and the Senior Department Chair of General Studies position are virtually identical in function and job duties.

74. On July 11, 2018, Plaintiff asked Mr. Carr and Dr. Sparks if she had done anything

8
Case 3:19-cv-00345-HBG   Document 1   Filed 09/04/19   Page 8 of 16   PageID #: 8

to not deserve the "Dean of General Studies" position. Mr. Carr and Dr. Sparks responded by laughing in Plaintiff's face.

75. During the same July 11, 2018, meeting, Mr. Carr admitted that the decision to dissolve Plaintiff's position occurred about "two months ago" and was "basically the ripple effect of everything that started."

76. Defendant's employees, including Mr. Randall Carr and Dr. Betsy Sparks, began actively encouraging Plaintiff's subordinate employees to apply for the Dean of General Studies position.

77. On July 12, 2018, Defendant posted the Dean of General Studies position.

78. On July 25, 2018, for no other reason than to embarrass Plaintiff, Mr. Carr sent out an institution-wide announcement via email and posted on the Intranet stating that soon the "General Studies area will be moving to…new leadership, and better overall institutional effectiveness."

79. During July of 2018, Betsy Sparks, Randall Carr, and Jeremy Wells told Plaintiff that she needed to force Ms. Bozdogan to take FMLA leave against her will, but Plaintiff refused.

80. On July 26, 2018, Plaintiff complained to Jeremy Wells and Betsy Sparks that forcing Stephenie Bozdogan to take FMLA leave because she was pregnant was discriminatory. Plaintiff again reiterated that both she and Ms. Bozdogan feel harassed, discriminated against, and retaliated against.

81. At all times stated herein, Randall Carr was an agent and employee of Defendant.

82. At all times stated herein, Randall Carr had the authority to discipline and terminate the Plaintiff.

83. On July 26, 2018, for the first time in her career, Plaintiff received a negative annual review from Defendant.

84. Prior to the review on July 26, 2018, Plaintiff had never received a negative annual review.

85. The 2018 annual review contained falsehoods, was trumped up, retaliatory, and was done to document Plaintiff's personnel file, and to encourage her to quit.

86. Plaintiff's annual review was conducted differently than was done for other Deans and Department Chairs, as Dr. Sparks merely changed the date (from 2017 to 2018) for others, making them eligible to receive merit increases.

87. As a result of the negative 2018 annual review, Plaintiff was ineligible for a raise for the first time in her career.

88. On July 31, 2018, the Plaintiff's supervisor, Dr. Betsy Sparks, abruptly retired.

89. On or after July 31, 2018, the Plaintiff began reporting to and was supervised by the Chief Academic Officer, Jeremy Wells.

90. After Plaintiff began reporting to Jeremy Wells, on or about July 31, 2018, Plaintiff stated to Mr. Wells that she was being discriminated and retaliated against because of her sex or for complaining about sex and pregnancy discrimination.

91. For example, on July 31, 2018, Plaintiff explicitly stated to Mr. Wells that she felt pressured by Mr. Carr to force Ms. Bozdogan to take FMLA leave against her own wishes because she was pregnant and that Plaintiff was not sure of the legality of such a request.

92. Mr. Wells essentially ignored Plaintiff's claims and encouraged Plaintiff to avoid getting things in writing.

93. During the same July 31, 2018, meeting, Mr. Wells warned Plaintiff that she "probably always wants to make sure [she has] a good relationship with HR."

94. Plaintiff went on to inform Mr. Wells that Ms. Bozdogan has not been treated the same as other employees who have had to take FMLA leave or otherwise. Mr. Wells again ignored

Plaintiff's claims.

95. Rather than acknowledge Plaintiff's claims, Mr. Wells stated to Plaintiff that she "could've handled it better" and that she was "certainly extremely defensive."

96. Jeremy Wells did not investigate or take any action to resolve Plaintiff's complaints.

97. During the same July 31, 2018, meeting, Plaintiff stated to Mr. Wells that the "Dean of General Studies" job call was essentially the same job Plaintiff was currently doing.

98. During the same July 31, 2018, meeting, Plaintiff informed Mr. Wells that Mr. Carr and Dr. Sparks informed Plaintiff that they would be "dissolving her position."

99. On August 6, 2018, Plaintiff applied for the newly-created position of Dean of General Studies.

100. As of August 6, 2018, Plaintiff was qualified for the position of Dean of General Studies.

101. As of August 6, 2018, the Dean of General Studies encompassed the same functions and job duties as Plaintiff's current position of Senior Department Chair of General Studies.

102. On August 14, 2018, for the first time in her career, Defendant denied Plaintiff's travel request to attend the International Sociology of Sport Association conference to present peer-reviewed work.

103. Prior to the August 14, 2018, budget meeting, throughout Plaintiff's employment, Plaintiff's prior travel requests to attend conferences were always granted.

104. Thereafter, Randall Carr, Vice President of Talent Management and Human Resources, continued harassing both Plaintiff and the pregnant professor, Stephenie Bozdogan.

105. For example, Randall Carr began demanding that Stephenie Bozdogan take Family Medical Leave Act ("FMLA") leave.

106. However, Stephenie Bozdogan explicitly stated that she did not want or need to take FMLA leave.

107. Plaintiff supported Stephenie Bozdogan's decisions and opposed Randall Carr and Dr. Betsy Sparks' discriminatory actions in pressuring the pregnant professor to take FMLA leave.

108. In August of 2018, and after Plaintiff raised concerns that the newly created position was essentially her current position, Defendant changed the name of the newly-created position of "Dean of General Studies" to "Dean of Institutional Faculty Effectiveness and General Studies".

109. The Defendant changed the name of the newly-created position to "Dean of Institutional Faculty Effectiveness and General Studies" due to Plaintiff's complaints that this newly-created position was the same as Plaintiff's current position of Senior Department Chair of General Studies.

110. On August 23, 2018, without providing Plaintiff with any prior notice or warning, Plaintiff was called into a meeting with her supervisor, Jeremy Wells, to "interview" for the position of "Dean of Institutional Faculty Effectiveness and General Studies."

111. During the "interview" on August 23, 2018, Plaintiff asked Jeremy Wells if her current position was going to be dissolved, to which Mr. Wells said he did not know.

112. During this August 23, 2018, "interview," Mr. Wells did not have Plaintiff's resume on hand, nor did he ask any questions about any claims Plaintiff had previously brought up.

113. On September 4, 2018, Defendant officially announced that a male, Dr. Michael Patrick, was hired for the position of Dean of Institutional Faculty Effectiveness and General Studies.

114. The Defendant had already selected Dr. Michael Patrick for this new position on or before Plaintiff's August 23, 2018, "interview."

115. As a result, the Defendant's "interview" of Plaintiff for this position on August 23, 2018, was a sham because the decision to select Dr. Michael Patrick for the position had already been made at that time.

116. Plaintiff was more qualified than Dr. Michael Patrick for the position of Dean of Institutional Faculty Effectiveness and General Studies.

117. According to the Defendant's own job call for the position, Dr. Michael Patrick did not meet the minimal educational requirements for the position, and he was not even qualified for the position, as he does not hold a terminal degree in a General Studies area.

118. However, the Plaintiff had all qualifications required by Defendant's job call for the position.

119. Defendant refused and/or failed to hire Plaintiff for the position of Dean of Institutional Faculty Effectiveness and General Studies due to her sex and/or due to her complaints of discrimination and/or retaliation.

120. Defendant's failure to hire Plaintiff for the position of Dean of Institutional Faculty Effectiveness and General Studies constitutes unlawful discrimination and/or retaliation.

121. Thereafter, on or around September 3, 2018, Plaintiff began reporting to Dr. A.J. Chase, Vice-President of Student Success and Dean of Lonas Campus.

122. Dr. A.J. Chase became Defendant's Vice-President of Student Success and Dean of Lonas Campus on or about September 3, 2018.

123. Defendant did not post the position of Vice-President of Student Success and Dean of Lonas Campus.

124. Despite being qualified, Plaintiff did not have the opportunity to apply and interview for this position because of sex discrimination and/or because of Plaintiff's complaints of sex and/or pregnancy discrimination.

125. On September 4, 2018, Plaintiff complained to Dr. A.J. Chase of the discrimination, retaliation, and harassment that Plaintiff was suffering, but Plaintiff's complaints were again ignored.

126. On September 4, 2018, the Plaintiff was terminated from her position as Senior Department Chair of General Studies for a trumped-up reason.

127. During the termination meeting on September 4, 2018, Mr. Wells claimed that Plaintiff was terminated because Defendant dissolved her position of Senior Department Chair of General Studies.

128. The reason for Plaintiff's termination was trumped up.

129. Prior to September 4, 2018, the Defendant created a "new" position that retained all of Plaintiff's job responsibilities as Senior Department Chair of General Studies.

130. After the Plaintiff was terminated on September 4, 2018, she continued to work for Defendant as an Associate Professor until September 30, 2018.

131. After September 4, 2018, Defendant did not offer Plaintiff any faculty position.

132. Throughout Plaintiff's employment, it was standard practice for the Defendant to offer previous administrators the opportunity to transfer into full-time or adjunct teaching positions.

133. Defendant did not transfer Plaintiff to a full-time teaching position or offer Plaintiff an adjunct teaching position.

134. Prior to her September 4, 2018, termination, and up through September 30, 2018, Plaintiff's last day, the Defendant was advertising for positions, including in the Communications Department, that Plaintiff was qualified to perform.

135. The reason for Plaintiff's termination, as well as for Defendant's failure to offer, hire, and/or promote Plaintiff to the positions of full-time faculty member and/or adjunct faculty

14
Case 3:19-cv-00345-HBG   Document 1   Filed 09/04/19   Page 14 of 16   PageID #: 14

member, were due to Plaintiff's sex and/or due to her complaints of sex discrimination, including pregnancy discrimination, and/or retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, the Pregnancy Discrimination Act of Title VII, 42 U.S.C. § 2000e(k), the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.*, and Plaintiff sues Defendant for the above causes of action pursuant to said statutes.

136. The Defendant is responsible and liable for the discriminatory and retaliatory actions of its agents and employees under the doctrine of respondent superior and under agency principles.

137. The Plaintiff filed a timely Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") on or about January 22, 2019. (EEOC Charge, attached hereto and incorporated herein as Exhibit 4).

138. The Plaintiff's EEOC Charge (Exh. 4) was timely filed.

139. The Plaintiff thereafter received a Notice of Right to Sue from the EEOC, dated June 28, 2019. (Notice of Right to Sue, attached hereto and incorporated herein as Exhibit 5).

140. This Complaint was filed within ninety (90) days from the receipt of the Notice of Right to Sue (Exh. 5).

141. This suit is timely filed.

142. As a result of Defendant's conduct, the Plaintiff has lost tangible job benefits, including a loss of income and benefits, both past and future, including front pay, and has suffered and will continue to suffer irreparable injury, emotional distress, humiliation and embarrassment, and other pecuniary losses as a direct result of Defendant's illegal actions.

143. The conduct of Defendant is with malice or in reckless disregard to Plaintiff's federally protected rights sufficient to justify an award of punitive damages.

144. Following her termination, Plaintiff's attorneys served a Notice of Non-Spoliation on the Defendant, dated January 18, 2019. (Notice of Non-Spoliation, attached hereto as Exhibit 6).

145. The Defendant thereafter received the Notice of Non-Spoliation, dated January 18, 2019 (Exh. 6).

WHEREFORE, Plaintiff prays for the following relief:

1. Compensatory damages, including front pay, (or in the alternative reinstatement if the Court deems it appropriate).

2. Punitive damages.

3. Liquidated damages.

4. Prejudgment interest.

5. Reasonable attorney's fees.

6. The costs of this action.

7. A jury to try this cause.

8. Appropriate injunctive relief.

RESPECTFULLY SUBMITTED this 4th day of September, 2019.

**THE BURKHALTER LAW FIRM, P.C.**

s/David A. Burkhalter, II
David A. Burkhalter, II, BPR #004771
D. Alexander Burkhalter, III, BPR #033642
Zachary J. Burkhalter, BPR #035956
Attorneys for Plaintiff
111 S. Central Street
P.O. Box 2777
Knoxville, Tennessee 37901-2777
(865) 524-4974